1
2
3
4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELANIE FRENCH,<br><br>                    Plaintiff,<br><br>      v.<br><br>LINCOLN HOSPITAL DISTRICT<br>NO. 3,<br><br>                    Defendant. | NO:  10-CV-0259-TOR<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS AND<br>GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

        BEFORE THE COURT is Defendant's Motion to Dismiss for Failure to

State a Claim and Defendant's Second Motion for Summary Judgment (ECF. No.

37).  This matter was heard without oral argument.  The Court has reviewed the

motion, the response, and the reply, and is fully informed.

                              BACKGROUND

        Plaintiff Melanie French filed an amended complaint against Lincoln

Hospital District No. 3 on October 12, 2011, alleging substantive and procedural

due process violations under 42 U.S.C. § 1983 stemming from a termination of her

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 1

employment by the hospital.  Defendant Lincoln Hospital District No. 3 has moved

to dismiss the amended complaint for failure to state a claim, or, in the alternative,

for summary judgment.  Plaintiff opposes dismissal and summary judgment as to

her procedural due process claims.

STATEMENT OF FACTS

The following facts are principally undisputed.  Plaintiff Melanie French

("Plaintiff") is a former employee of Defendant Lincoln Hospital District No. 3

("the Hospital").  Lincoln Hospital District No. 3 is a public hospital district

serving residents of Lincoln County, Washington.  The Hospital provides standard

medical care as well as long-term care and assisted living services for the elderly.

From April 1, 2005, until March 2, 2010, Plaintiff was employed in the

Hospital's long-term care facility as a full-time certified nursing assistant.  Her

employment during this period was governed by a collective bargaining agreement

("CBA") between the Hospital and Plaintiff's labor union, SEIU Healthcare

1199NW.  Under the terms of the CBA, Plaintiff could only be fired from her

position with the Hospital for cause.  The CBA also provides for a multi-step

grievance procedure which culminates in arbitration following a termination.

On February 24, 2010, the Washington Department of Social and Health

Services began an annual on-site review of the Hospital's long-term care facility.

During this review, one of the facility's long-term care residents informed a state

surveyor that Plaintiff had been "rough, short and bossy" with her approximately one month earlier.  The state surveyor relayed this complaint to the Hospital's Resident Care Coordinator, Kathy Armstrong, who in turn relayed the complaint to the Hospital's Director of Nursing Services, Tami French.[1]

Upon learning of the resident's complaint, Tami French decided to suspend Plaintiff and to begin an internal investigation.  Tami French directed her immediate subordinate, Kathy Armstrong, to inform Plaintiff of the suspension.  Pursuant to this directive, Armstrong summoned Plaintiff into her office, informed her that a resident had complained about her behavior, and informed her that she was suspended pending the outcome of an internal investigation.

During this brief meeting with Armstrong on February 24, 2010, Plaintiff stated to Armstrong that the complaining resident must have mistaken her for another employee because she could not recall having been rude and bossy with anyone.  Melanie French Deposition, ECF No. 38-3, at 49.  Armstrong responded that the complaining resident had specifically identified Plaintiff by name.

---

[1] Despite the fact that they share the same last name, it does not appear that Plaintiff Melanie French and Tami French are related.  To avoid confusion, this order will refer to Plaintiff Melanie French as "Plaintiff" and to Tami French as "Tami French."

Armstrong did not, however, provide Plaintiff with the name of the complaining resident or the date on which the incident occurred.  Armstrong then directed Plaintiff to leave the facility to begin her suspension.

Tami French subsequently investigated the complaining resident's allegations.  After interviewing the complaining resident, several other residents, and several of Plaintiff's co-workers, Tami French concluded that the allegations were substantiated.  Tami French memorialized her findings in an undated written report entitled "Investigation of Allegation of Verbal Abuse."  *See* ECF No. 43-2, at 34-35 of 107.  The final two paragraphs of this report read:

> CONCLUSION
> Even though [the complaining resident] could not remember Melanie's exact words, but had her feelings hurt, my findings is [sic] verbal abuse with psychological harm and will not be tolerated.  I also find Melanie was also verbally abusive with potential psychological harm for [a different resident's] memory did not allow her to remember from one minute to the next, yet it is clear that [redacted] self thought of being stupid [sic], and being talked to as if a child will not be tolerated.
>
> ACTION:
> TERMINATION.  DSHS AND DOH NOTIFIED.[2]

After drafting this report, Tami French met with the Hospital's Human Resources Manager and Corporate Compliance Officer, Janelle Hiccox

---

[2] Tami French testified during her deposition that she did not in fact notify DSHS and DOH at the time.  Tami French Deposition, ECF No. 43-2, at 32.

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 4

("Hiccox"), to discuss the results of her investigation. Tami French did not provide Hiccox with a copy of her written report, but did give an oral account of her findings. The two also discussed whether Plaintiff would be terminated. According to Hiccox, any decision on the issue of termination belonged to Tami French as the Director of Nursing Services, subject only to Hiccox's approval. Hiccox Deposition, ECF No. 43-2, at 8-9. Tami French informed Hiccox that she did intend to terminate Plaintiff. Hiccox Deposition, ECF No. 43-2 at 16.

On March 2, 2010, Tami French and Hiccox met with Plaintiff and Plaintiff's union representative, Jodi Devous, to discuss the results of the internal investigation. At the beginning of the meeting, Tami French asked Plaintiff whether she knew why she had been called into the meeting. Plaintiff responded that she knew nothing more than what she had been told by Kathy Armstrong immediately before she had been suspended: that a long-term care resident had complained about her being rude and bossy approximately one month earlier. Tami French replied that Plaintiff would likely not remember the incident due to the passage of time. Tami French further explained, however, that the complaining resident had specifically identified Plaintiff by name and that, according to the complaining resident, Plaintiff had apologized to her the following day.

The parties sharply disagree about what occurred next during the March 2, 2010 meeting. According to Plaintiff, Tami French then informed her that her

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 5

1   actions were serious enough to warrant immediate termination.  Immediately

2   thereafter, Tami French informed Plaintiff that she was in fact being terminated

3   and handed her a written notice of termination.  Tami French and Hiccox then left

4   the room for a short time to allow Plaintiff to speak privately with her union

5   representative.  At no time during the meeting was Plaintiff asked or invited to

6   respond to the allegations made by the complaining resident or to Tami French's

7   investigative findings.  In Plaintiff's estimation, the purpose of the meeting was

8   merely to inform her that she had been terminated.

9       According to the Hospital, the next event during the meeting was an open-

10  ended invitation to Plaintiff to respond to the complaining resident's allegations.

11  Plaintiff responded that she could not recall having been rude or bossy with a

12  resident and did not recall having apologized to a resident for such behavior.  After

13  Plaintiff denied the allegations, Hiccox and Tami French left the room to discuss a

14  final disciplinary decision.  After deciding that termination was warranted, Hiccox

15  and Tami French returned to the room, informed Plaintiff that she was being

16  terminated, and handed her a written notice of termination.  By Hiccox's and Tami

17  French's accounts, the final decision to terminate Plaintiff was not made until after

18  Plaintiff had been given an opportunity to present her side of the story.

19      Despite their disagreement about the sequence of events during the March 2,

20  2010 meeting, the parties do agree about the following: (1) Plaintiff was not

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 6

provided with additional details concerning the complaining resident's allegations prior to the meeting; (2) Plaintiff was not provided with a copy of Tami French's investigative report prior to the meeting; (3) Hiccox and Tami French met to discuss the complaining resident's allegations and disciplinary action approximately two days prior to the meeting, at which time Tami French indicated that she intended to terminate Plaintiff (Hiccox Deposition, ECF No. 43-2, at 16); (4) Hiccox drafted the written notice of termination prior to the meeting and brought it with her to the meeting; and (5) Plaintiff was in fact terminated during the meeting.

On March 5, 2010, Plaintiff's union representative filed a grievance with the Hospital. On March 8, 2010, Hiccox emailed the union representative to schedule an initial meeting pursuant to the CBA's established grievance procedure. On March 26, 2010, the union representative emailed Hiccox and informed her that the union wanted to drop the grievance because Plaintiff had found another job. Neither Plaintiff nor the union took any further action to pursue the grievance or otherwise contest the termination.

ANALYSIS

**I.    Sufficiency of Allegations in the Amended Complaint**

To prevail on a claim under 42 U.S.C. § 1983 against a local government entity, a plaintiff must prove that the entity violated his or her constitutional rights

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 7

by engaging in "action pursuant to official municipal policy of some nature."

*Monell v. Dep't. Soc. Servs.*, 436 U.S. 658, 691 (1978).  In the Ninth Circuit, a

plaintiff may establish the existence of an "official municipal policy" under any of

the following theories: (1) action pursuant to an express policy or longstanding

practice or custom; (2) action by a final policymaker acting in his or her official

policymaking capacity; (3) ratification of an employee's action by a final

policymaker; and (4) a failure to adequately train employees with deliberate

indifference to the consequences.  *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th

Cir. 1999); *see also* Ninth Circuit Model Civil Jury Instructions, Nos. 9.4-9.7.

There are two paragraphs in Plaintiff's amended complaint that are relevant

to the issue of whether Plaintiff has sufficiently pleaded a claim for municipal

liability under *Monell*:

> IX.  The actions of Lincoln Hospital District No. 3 in terminating
> Plaintiff's employment without prior notice of charges, a pre-
> suspension hearing, a pre-termination hearing, or post-termination
> hearing were pursuant to an official policy, practice, or custom, or
> were the acts of a final policy maker, acting under color of law.

> X.  The actions of Lincoln Hospital District No. 3 in terminating
> Plaintiff's employment without prior notice of charges, a pre-
> suspension hearing, a pre-termination hearing, or post-termination
> hearing, were a ratification of the acts of Tami French, an
> employee of Lincoln Hospital District No. 3 or of the acts of a final
> policy maker who approved of Defendant [sic] Tami French's
> actions.

Pl.'s Am. Compl., ECF No. 35, at ¶¶ 9-10.

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 8

The first of these paragraphs is nothing more than a formulaic recitation of the showing required to prove the second element of a *Monell* municipal liability claim. Taken alone, this paragraph is insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and citations omitted).

The second paragraph, however, specifically alleges that the Hospital is liable because an official policymaker ratified the actions of its Director of Nursing Services, Tami French. This is not a mere "formulaic recitation" of the municipal liability standard; rather, it is a "further factual enhancement" of the general allegation set forth in the preceding paragraph. *See Iqbal*, 556 U.S. at 678. Read in its proper context, this paragraph identifies the specific facts and legal theory that Plaintiff will use to establish municipal liability: ratification of an employee's actions by a final policymaker. Accordingly, the allegations in the amended complaint are sufficient to state a claim under *Monell* based upon a "ratification" theory of municipal liability. The Hospital's motion to dismiss for failure to state a claim is denied.

However, the amended complaint does not plead sufficient facts to allow Plaintiff to pursue alternative theories of municipal liability (*i.e.*, official policy or

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 9

established custom, official action of a final policymaker, or failure to provide

adequate training).  Indeed, the only reference to these alternative theories in the

amended complaint is the "formulaic recitation" of the municipal liability standard

in Paragraph IX.  *See* Pl.'s Am. Compl., ECF No. 35, at ¶ 9.  In contrast to the

"further factual enhancement" supporting Plaintiff's "ratification" theory, the

amended complaint does not allege specific facts to support any other theory.

Accordingly, and as discussed in further detail below, Plaintiff may not avoid

summary judgment on the ground that the Hospital engaged in other forms of

"official municipal policy" sufficient to establish municipal liability.

## II.    Summary Judgment

Summary judgment is appropriate when a moving party demonstrates "that

there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for

summary judgment bears the initial burden of informing the court of the basis for

its motion and of identifying the portions of the affidavits, pleadings, and

discovery that demonstrate an absence of a genuine issue of material fact.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  For purposes of a summary judgment

motion, a fact is "material" if it might affect the outcome of the suit under the

governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

A dispute is "genuine" as to a material fact if there is sufficient evidence for a

1   reasonable jury to return a verdict for the non-moving party.  *Id.* at 248.  In

2   determining whether there is a genuine issue of material fact sufficient to preclude

3   summary judgment, a court must construe the facts, as well as all rational

4   inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

5   *Harris*, 550 U.S. 327, 378 (2007).

6        To prevail on a § 1983 claim against a municipal government agency, a

7   plaintiff must prove the following elements by a preponderance of the evidence:

8   (1) action by an agency employee or official under color of law; (2) deprivation of

9   a right guaranteed the U.S. Constitution or a federal statute; and (3) action pursuant

10  to an "official municipal policy."  *Monell v. Dep't. Soc. Servs.*, 436 U.S. 658, 691

11  (1978).  In this case, Plaintiff has alleged violations of her rights to substantive and

12  procedural due process under the Fifth and Fourteenth Amendments.  Pl.'s Am.

13  Compl., ECF No. 35, at ¶¶ 8, 11.  Plaintiff's theory of municipal liability under

14  *Monell* is that the Hospital, acting through a final policymaker, ratified the

15  allegedly unconstitutional conduct.

16       For purposes of this motion, the Hospital concedes that (1) it was acting

17  under color of law when it terminated Plaintiff; and (2) Plaintiff had a

18  constitutionally-protected property interest in her continued employment.  Def.'s

19  Mem. in Supp. of Summ. J., ECF No. 39, at 9.  Accordingly, the Court must

20  determine whether there are genuine issues of material fact with regard to the due

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 11

1    process and official municipal policy elements of Plaintiff's claim.  This order will

2    address these two elements in reverse order.

3        A. <u>Municipal Liability</u>

4        A municipal entity may only be held liable under 42 U.S.C. § 1983 for

5    constitutional violations resulting from actions undertaken pursuant to an "official

6    municipal policy."  *Monell*, 436 U.S. at 691.  As the Supreme Court articulated in

7    *Monell*, the purpose of the "official municipal policy" requirement is to prevent

8    municipalities from being held vicariously liable for unconstitutional acts of their

9    employees under the doctrine of respondeat superior.  *Id.*; *Pembaur v. City of*

10   *Cincinnati*, 475 U.S. 469, 478-79 (1986); *Bd. of Cnty. Comm'ns of Bryan Cnty. v.*

11   *Brown*, 520 U.S. 397, 403 (1997).  Thus, the "official municipal policy"

12   requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the

13   municipality, and thereby make[s] clear that municipal liability is limited to action

14   for which the municipality is actually responsible."  *Pembaur*, 475 U.S. 469, 479-

15   80 (1986) (emphasis in original) (footnote omitted).

16       The Ninth Circuit recognizes four categories of "official municipal policy"

17   sufficient to establish municipal liability under *Monell*: (1) action pursuant to an

18   express policy or longstanding practice or custom; (2) action by a final

19   policymaker acting in his or her official policymaking capacity; (3) ratification of

20   an employee's action by a final policymaker; and (4) a failure to adequately train

employees with deliberate indifference to the consequences.[3] *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999); *see also* Ninth Circuit Model Civil Jury Instructions, Nos. 9.4- 9.7.

Where, as in the instant case, a plaintiff's claim is based upon an *isolated* constitutional violation, he or she is generally limited to demonstrating municipal liability through official action of a final policymaker, ratification by a final policymaker, or failure to provide adequate training.  *Christie*, 176 F.3d at 1235.  Although Plaintiff's memorandum in opposition to summary judgment argues municipal liability under all four theories recognized in the Ninth Circuit (*see* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 44, at 17-20), the facts

---

[3] Ninth Circuit case law has occasionally separated the "express policy or longstanding custom" theory into two separate theories.  *See, e.g.*, *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010), reversed on other grounds by *Filarsky v. Delia*, __ U.S. __, __ S. Ct. __, 2012 WL 1288731 (April 17, 2012).  Similarly, the Ninth Circuit has occasionally grouped the "action by a final policymaker" and "ratification by a final policymaker" theories into a single theory.  *See id.*  For purposes of this order, the theories are identified in the manner in which they are grouped by the Ninth Circuit's Model Civil Jury Instructions.

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 13

alleged in her amended complaint are limited to a ratification theory. Accordingly, the Court's analysis must be limited to that theory.

To establish ratification by an official policymaker, a plaintiff must prove that an "authorized policymaker[] approve[d] a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)). "Ordinarily, ratification is a question for the jury. However, as with any jury question, a plaintiff must establish that there is a genuine issue of material fact regarding whether the ratification occurred." *Id.* at 1238-39 (citations omitted). Accordingly, to survive summary judgment, a plaintiff must demonstrate that the person ratifying the subordinate's conduct (1) was a "final policymaker" under state law;[4] (2) had

---

[4] Because this is a pure question of law, it must be resolved by the Court prior to trial. *See Jett*, 491 U.S. at 737 ("[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury. . . . Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur[.]") (emphasis in original) (internal citations omitted).

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 14

1  knowledge of the alleged constitutional violation; and (3) expressly approved of

2  the subordinate's act. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737-38

3  (1989); *Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir. 2004).

4         1.  *"Final Policymaker" Under Washington Law*

5         To determine whether an employee is a "final policymaker," a court must

6  examine the degree of authority vested in that person under state law. *Jett*, 491

7  U.S. at 737.  To the extent that state law grants the employee express policymaking

8  authority, the employee is deemed a "final policymaker." *Id.*  Even in the absence

9  of express statutory authority, however, "[a] municipal employee may act as a *de*

10 *facto* policymaker under § 1983 . . . [depending upon] the way a local government

11 entity operates in practice." *Lytle*, 382 F.3d at 983 (citing *Jett*, 491 U.S. at 737).

12 Although there is no hard-and-fast rule for evaluating "*de facto*" policymaking

13 authority, the fundamental question is whether the employee is "in a position of

14 authority such that a final decision by that person may appropriately be attributed

15 to the [municipality]." *Id.*

16        In this case, Lincoln Hospital District No. 3 is a public hospital district

17 authorized by RCW 70.44.010.  As such, the Hospital is governed by an elected

18 board of commissioners and a superintendent. *See* RCW 70.44.060-090.  The

19 board of commissioners is vested with authority to "employ superintendents,

20 attorneys, and other technical or professional assistants and all other employees"

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 15

1   and to "make all contracts useful or necessary" to carry out its statutory authority.

2   RCW 70.44.060(10).  The superintendent is "the chief administrative officer of the

3   public district hospital" and is charged with ensuring "the efficient administration

4   of all affairs of the district."  RCW 70.44.080.  Accordingly, the board of

5   commissioners and the superintendent have final authority over operations of a

6   public hospital, including employment-related matters.

7        The dispositive inquiry at this stage of the proceedings is whether the

8   Hospital's board of directors or superintendent has delegated authority over

9   employee discipline decisions to Janelle Hiccox, the Hospital's Human Resources

10  Manager and Corporate Compliance Officer, such that Hiccox's final decisions on

11  such matters "may appropriately be attributed" to the Hospital District itself.  *Lytle*,

12  382 F.3d at 983.  Here, Plaintiff has not come forward with any evidence of an

13  official delegation of such authority to Hiccox.  And yet the Hospital, for its part,

14  does not suggest that Hiccox has *not* received an official delegation of such

15  authority.  Thus, without access to the Hospital's written policies and procedures,

16  there is simply no way for the Court to determine whether Hiccox has official

17  authority over employee discipline decisions.

18       Nevertheless, it appears from the record that Hiccox has, at a minimum, *de*

19  *facto* authority over employee discipline decisions.  *See Lytle*, 382 F.3d at 983.  As

20  Hiccox acknowledged during her deposition testimony, any decision by the

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 16

Director of Nursing (Tami French) to terminate a long-term care employee is subject to her final approval as the Hospital's Human Resources Manager and Corporate Compliance Officer. Hiccox Deposition, ECF No. 43-2, at 8-9. Moreover, both Hiccox and Tami French assert that the "final decision" to terminate Plaintiff was made after Tami French "recommended" to Hiccox that Plaintiff be terminated. Hiccox Declaration, ECF No. 38-1, at ¶¶ 28-29; Tami French Declaration, ECF No. 38-2, at ¶¶ 20-22. Given that there is nothing in the record to suggest that her termination decisions are subject to further approval, Hiccox qualifies as a "final policymaker" for purposes of employee discipline decisions. *See Lytle*, 382 F.3d at 984-85 (holding that assistant superintendent who exercised final review authority over employee discipline decisions was a "final policymaker" for purposes of employee discipline).

2. *Knowledge of Constitutional Violation*

The question of whether a final policymaker knew of a subordinate's unconstitutional actions should ordinarily be reserved for the trier of fact. *Christie*, 176 F.3d at 1239. Here, there are ample facts from which a rational juror could conclude that Hiccox knew of Tami French's allegedly unconstitutional conduct. First, Tami French expressly informed Hiccox of her investigative findings and disciplinary decision approximately two days before the March 2, 2010 pre-termination hearing. Second, Hiccox actually attended the pre-termination meeting

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 17

at which the allegedly unconstitutional conduct allegedly occurred.  These two

facts, standing alone, warrant resolution of the knowledge issue by the jury.

### 3.  *Express Approval of Subordinate's Act*

Like the question of knowledge, the question of express approval is fact-

sensitive and should ordinarily be reserved for the jury.  *Christie*, 176 F.3d at 1239.

In order to survive summary judgment, a plaintiff need only demonstrate more than

"[a] mere failure to overrule a subordinate's actions."  *See Lytle*, 382 F.3d at 987.

As noted above, Hiccox was directly involved in the decision to terminate Plaintiff.

Hiccox, by her own admission, conferred with Tami French on at least two

occasions before officially terminating Plaintiff on March 2, 2010.  Hiccox

Deposition, ECF No. 43-2, at 12-16; Hiccox Declaration, ECF No. 38-1, at ¶¶ 22,

28-29.  Once again, the extent of Hiccox's involvement in the termination process

is sufficient to warrant resolution of this issue by the jury.  Thus, Defendant has

failed to establish that it is entitled to judgment as a matter of law on the municipal

liability element of Plaintiff's claim.

### B.  Procedural Due Process

For purposes of this motion, the parties agree that Plaintiff had a protected

property interest in her continued employment with the Hospital.  Def.'s Mem. in

Supp. of Summ. J., ECF No. 39, at 9.  Accordingly, Plaintiff was entitled to

adequate procedural due process in the form of notice and opportunity to be heard

1    prior to being suspended or terminated.  *Loudermill*, 470 U.S. at 542.  Generally,

2    the amount of process due in a particular situation depends upon a balancing of the

3    competing interests at stake.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

4    Specifically, a court must balance, "First, the private interest that will be affected

5    by the official action; second, the risk of an erroneous deprivation of such interest

6    through the procedures used, and the probable value, if any, of additional or

7    substitute procedural safeguards; and finally, the Government's interest."  *Id.*

8            1. *Suspension*

9            It is undisputed that Plaintiff met with one of her supervisors, Kathy

10    Armstrong, on February 24, 2010, prior to being suspended.  Plaintiff does not

11    dispute that Armstrong informed her of the general nature of the allegations (*i.e.*,

12    that she had been "rough, short and bossy" with a long-term care resident

13    approximately one month earlier) during this meeting.  Plaintiff also does not

14    dispute that, after being informed of the general nature of the allegations, she

15    responded, "Well, it wasn't me."  Melanie French Deposition, ECF No. 38-3, at

16    49.  Similarly, Plaintiff does not dispute that, after being informed that the

17    complaining resident had identified her by name, she responded, "Well, it still

18    wasn't me."  Melanie French Deposition, ECF No. 38-3, at 49.

19            Although the February 24, 2010 meeting was apparently brief, it

20    nevertheless provided Plaintiff with sufficient notice of the allegations against her

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 19

and an adequate opportunity to be heard.  Notably, in the suspension context, a pre-deprivation hearing need only "assure that the state employer's decision to suspend the employee is not 'baseless or unwarranted.'"  *Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988)).  Moreover, in circumstances where immediate dismissal is necessary to protect the safety of others, a very limited pre-suspension hearing (when followed by more extensive post-suspension procedures) will suffice.  *Id.* at 930; *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1177 (9th Cir. 1998).

        In view of the Hospital's significant interest in protecting its long-term care residents from potential abuse, and the fact that Plaintiff was informed of the complaining resident's allegations and given an opportunity to respond, there is no basis for concluding that the February 24, 2010 pre-suspension hearing violated Plaintiff's right to procedural due process.  This conclusion is further reinforced by the fact that the CBA expressly provides for immediate suspension of any employee who is suspected of verbally abusing a resident.  *See* Def.'s Statement of Facts in Supp. of Mot. for Summ. J, ECF No. 38, at ¶¶ 15-16.  Accordingly, the Hospital's motion for summary judgment is granted as to Plaintiff's suspension-based procedural due process claim.

### 2. *Termination*

The true force of Plaintiff's complaint is that she was terminated without receiving an adequate *Loudermill* hearing. Although the Hospital focuses on the nature and extent of the *post*-termination grievance procedures available to Plaintiff under the CBA,[5] the central issue is whether the March 2, 2010 *pre-*

---

[5] The Hospital cites *Armstrong v. Meyers*, 964 F.2d 948 (9th Cir. 1992), for the proposition that the post-termination procedures available to Plaintiff under the CBA were sufficient to overcome any potential deficiencies in the pre-termination hearing. *Armstrong* is distinguishable for two reasons. First, the plaintiff in *Armstrong* "challenge[d] the [CBA] grievance/arbitration procedure as constitutionally inadequate *on its face*" rather than as applied in his case. 964 F.2d at 950 n.2 (emphasis added). Thus, *Armstrong* does not stand for the proposition that the existence of extensive grievance procedures under a collective bargaining agreement can remedy an unconstitutional *application* of those procedures in a given case. Second, *Armstrong* did not involve a *pre*-termination procedural due process challenge. Indeed, the plaintiff in *Armstrong* was afforded a full pre-termination hearing pursuant to his collective bargaining agreement—a hearing which he did not challenge on appeal. *Id.* at 949. For these two reasons, Defendant's reliance upon *Armstrong* is misplaced.

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 21

termination hearing afforded Plaintiff adequate procedural due process.  While Plaintiff appropriately concedes that the adequacy of a pre-termination hearing depends in part upon the nature and extent of post-termination procedures available (*see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)), she correctly notes that a pre-termination hearing must, at bottom, afford an employee a *meaningful* opportunity to be heard.  *Loudermill*, 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story.").

A hearing at which an employer merely announces a predetermined termination does not afford an employee a meaningful opportunity to be heard under *Loudermill*.  *See Matthews v. Harney Cnty. Sch. Dist. No. 4*, 819 F.2d 889, 893 (9th Cir. 1987) (holding that teacher's opportunity to address the school board shortly after board voted in favor of termination deprived teacher of meaningful opportunity to be heard); *Ross v. City of Memphis*, 394 F.Supp. 2d 1024, 1038 (W.D. Tenn. 2005) ("A 'sham' proceeding in which the outcome of the hearing is predetermined does not meet the requirements of a pre-termination hearing and does not afford due process."); *Wagner v. City of Memphis*, 971 F.Supp. 308, 318 (W.D. Tenn. 1997) ("[W]hen the evidence establishes that the outcome of a municipal employee's pre-termination hearing has been predetermined regardless

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 22

of the proof presented, the concerns and goals of the pre-termination hearing as set

forth in *Loudermill* have not been met.  In such cases, there is no meaningful

opportunity to invoke the decisionmaker's discretion, and there is no possibility

that a mistaken decision can be avoided.") (footnote omitted).  Accordingly,

Plaintiff is entitled to relief if she can demonstrate that the March 2, 2010 hearing

was essentially a "sham" proceeding at which the Hospital simply informed her of

an existing and inflexible decision to terminate her employment.  Stated

differently, Plaintiff is entitled to relief if she can prove that Tami French and/or

Janelle Hiccox decided to terminate her employment before the March 2, 2010 pre-

termination hearing and could not have been influenced by anything she may have

said during the meeting.

    Here, Plaintiff has presented sufficient facts from which a reasonable juror

could conclude that the outcome of the March 2, 2010 meeting was essentially

predetermined.  As noted above, Tami French's investigative report, drafted well

in advance of the hearing, states that the behavior attributed to Plaintiff "will not be

tolerated."  This same report also states the following with regard to discipline:

"ACTION: TERMINATION.  DSHS AND DOH NOTIFIED."  It is undisputed

that Tami French discussed the investigative findings and disciplinary decision

referenced in this report with Janelle Hiccox approximately two days prior to the

March 2, 2010 meeting.  It is also undisputed that Hiccox prepared a typewritten

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 23

1    "Employee Discipline Record" in advance of the pre-termination hearing which

2    summarizes Tami French's investigative findings and which states "<u>This is an [sic]</u>

3    <u>termination regarding this issue.</u>" (emphasis in original).  The Hospital concedes

4    that this document served as an official termination letter; the only disputed fact is

5    whether Tami French handed the document to Plaintiff at the beginning or the end

6    of the March 2, 2010 pre-termination hearing.

7         Although Tami French and Janelle Hiccox have flatly denied making a

8    definitive termination decision prior to the pre-termination hearing (*see* Tami

9    French Declaration, ECF No. 38-2, at ¶¶ 20-22; Hiccox Declaration, ECF No. 38-

10   1, at ¶¶ 28-29) their self-serving denials are at least facially inconsistent with the

11   undisputed facts referenced above.  Conversely, these same undisputed facts tend

12   to support Plaintiff's otherwise self-serving characterization of the meeting as a

13   "lecture" followed by a pre-orchestrated termination announcement.  *See* Melanie

14   French Declaration, ECF No. 43-1, at ¶¶ 7-9.  Accordingly, these undisputed facts,

15   standing alone, are sufficient to preclude summary judgment in favor of the

16   Hospital.  *See, e.g.*, *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 968 (9th Cir.

17   1981) (holding that bona-fide issues of witness credibility should ordinarily be

18   resolved by a jury).  When coupled with the existence of other disputed material

19   facts (*e.g.*, precisely *when* during the March 2, 2010 meeting Plaintiff was

20   officially terminated) summary judgment is inappropriate.

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 24

Finally, it bears noting that Plaintiff's "opportunity to be heard" on the termination issue may have been significantly undermined by the Hospital's failure to provide her with additional details concerning the complaining resident's allegations in advance of the pre-termination hearing. Perhaps most troubling is the fact that, prior to the pre-termination hearing, the Hospital did not inform Plaintiff of the outcome of Tami French's internal investigation. Thus, when Plaintiff appeared for the hearing on March 2, 2010, she knew only what her immediate supervisor had told her on February 24, 2010: that an unnamed resident had accused her of being "rough, short and bossy" approximately one month earlier. Given that Plaintiff did not have prior notice of several *additional* details that further informed the Hospital's termination decision, a rational trier of fact might conclude that the Hospital violated Plaintiff's right to adequate notice of the allegations against her. Thus, Defendant has failed to establish that it is entitled to judgment as a matter of law on the constitutional violation element of Plaintiff's claim.

### C. Substantive Due Process

Plaintiff has not sought to avoid summary judgment in favor of the Hospital on her substantive due process claim. Indeed, the only indication that Plaintiff intends to pursue such a claim are two nominal references to "substantive due process" in her amended complaint. *See* Pl.'s Am. Compl., ECF No. 35, at ¶¶ 8,

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT ~ 25

11.  Because Plaintiff has abandoned her substantive due process claim, this claim must be dismissed.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion to Dismiss, or in the alternative for Summary Judgment (ECF No. 37) is **DENIED** as to dismissal of the amended complaint; **GRANTED** in part as to Plaintiff's suspension-based procedural due process claims; **DENIED** in part as to Plaintiff's termination-based procedural due process claims; and **GRANTED** in part as to Plaintiff's substantive due process claims.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 23rd day of April, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER RE: DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ~ 26